LGR LAW, LLC
FEDERAL CRIMINAL DEFENSE

NEW JERSEY OFFICE
06 POMPTON AVENUE, SUITE 25
CEDAR GROVE, NJ 07009
(973) 239-4300

NEW YORK OFFICE
347 5TH AVENUE, SUITE 1402
NEW YORK, NY 10016
(646) 205-2259

LORRAINE@LGRLAWGROUP.COM
WWW.LGAULIRUFO.COM
FAX: (973) 239-4310

December 12, 2025

*Via ECF*
The Hon. George B. Daniels
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *United States v. Hector Tirado*
Docket No. 15-CR-487

Dear Judge Daniels:

Please accept this letter brief *in lieu* of a more formal motion seeking early termination of Hector Tirado's ("Hector" or "Mr. Tirado") term of supervised release pursuant to 18 U.S.C.§ 3583(e)(1). For the reasons set forth herein, Mr. Tirado respectfully requests that Your Honor order the early termination of his term of supervised release. Mr. Tirado maintains that early termination of his supervised release is warranted here after consideration of the factors set forth in 18 U.S.C. § 3553(a), as well as the recent amendments to the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") regarding early termination of supervised release, and the policy statements of those Guidelines. The 2025 Guidelines place significant weight on rehabilitation as a major factor when determining whether to grant early termination of supervised release. Moreover, they emphasize individualized assessments, encouraging judges to consider the defendant's conduct, compliance with supervision conditions, and evidence of rehabilitation during the period of supervision.[1] The factual and legal bases for Mr. Tirado's request are set forth below, and strongly support his request for early termination of his supervised release.

## I. <u>Preliminary Statement</u>

[1] U.S. Sentencing Guidelines Manual ch. 5, pt. D, introductory cmt. (U.S. Sent'g Comm'n 2025).

Born and raised in a low income neighborhood in the Bronx, Mr. Tirado is not the same man Your Honor sentenced eight years ago. Hector has used his term of supervised release to undertake the hard work necessary to rebuild his life. He has held several steady and meaningful jobs, cultivated and fostered a loving relationship with his two young children as well as other members of his family, and faithfully participated in intensive programs that have aided his sobriety, mental wellbeing, and moral character. Mr. Tirado's life today reflects not just compliance with the law and his conditions of supervised release, but also fulfillment of the goals of supervised release – stability, responsibility, and rehabilitation. Because continued supervision would add little beyond what Mr. Tirado already demands of himself, and in light of the recent amendments to the supervised release Guidelines, he respectfully requests that Your Honor grant his motion for early termination of supervised release.

## II. <u>Background Information and Facts Supporting Early Termination of Supervised Release</u>

### A. Procedural History

Mr. Tirado was arrested on July 30, 2015, when he had just turned 22 years old. Presentence Report ("PSR") ¶ ¶ 7, 15. On May 23, 2017, Hector pled guilty before Your Honor to one count of conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin in violation of 21 U.S.C. 841(b)(1)(A) and a detectable amount of crack in violation of 21 U.S.C. 841(b)(1)(C). PSR ¶ 6. On September 20, 2017, Your Honor sentenced Mr. Tirado to a term of 120 months imprisonment, followed by five years of supervised release. *See* Dkt. No. 289. His supervised release ends in July 2026. Thus, Mr. Tirado is seeking a seven-month reduction in his supervision.

### B. Background Facts

Since his sentencing for the instant offense – which is Mr. Tirado's first and only felony conviction and one that he sustained at just 24 years old[2] – Mr. Tirado has worked hard to rectify his mistakes and create a positive life for himself and his children. Prior to his incarceration in this case, Mr. Tirado had a substance abuse problem that stemmed from him witnessing his single mother struggle to support her family on her own. PSR ¶ 73. To ease his pain, and in an attempt to self-medicate, Hector began experimenting with different types of drugs when he was just a teenager. PSR ¶¶ 69-70. In the ninth grade, Mr. Tirado smoked marijuana every day. PSR ¶ 69. He also started experimenting with Ecstasy at 19 years old. PSR ¶70. At 20 years old, Hector started taking non-prescribed Percocets three to five times per day and last used it the night before his arrest. PSR ¶ 71. He also started taking non-prescribed Xanax at 20 years old. PSR ¶ 72. During his incarceration, Hector successfully completed a non-residential drug treatment program that helped him recover from his addiction and maintain his sobriety, which he has done to this day. Also, in 2019, Mr. Tirado achieved his goal of earning his General Education Development ("GED") while still incarcerated. PSR ¶ 76.

On July 3, 2023, Hector was released from prison and commenced his term of supervised release. He moved back in with his mother in the Bronx and enrolled in the Reentry through

---

[2] His only other convictions are disorderly persons offenses for which he received disorderly discharges. PSR ¶¶ 48-49.

Intensive Supervision and Employment ("RISE") court program shortly thereafter.[3] For a year, Hector appeared before the presiding RISE Court judge every two weeks to discuss his living and employment situation, legal and financial issues, and progress on completing a behavioral wellness program. Not only did he successfully complete the requirements of this program, but he also attended twelve sessions of therapy during his term of supervised release.

At the same time, Hector hit the ground running to secure meaningful and steady employment. From 2023 to 2024, Mr. Tirado worked at the company "DocGo" to assist migrants housed in New York City shelters. For the last year, Hector has worked at a New Rochelle clothing store called Top Tier. Through hard work and being a responsible and attentive employee, Hector was promoted to manager at Top Tier. Though Hector's usual schedule at the clothing store is Mondays through Saturdays from 12:00 PM to 8:00 PM (48 hours per week), he occasionally works from 12:00 PM to 6:00 PM on Sundays. In addition, on the weekends, Hector supplements his income by working as a security guard at nightlife events. Thus, he frequently works up to 60 hours a week.

Following Mr. Tirado's successful completion of the RISE court program, this Court signed an order on March 25, 2025, granting Mr. Tirado a two-year reduction in his term of supervised release, which now has a maximum expiration date of July 2, 2026. *See* Dkt. No. 744. While Mr. Tirado is extremely grateful for the reduction of his time on supervised release, he notes that such a reduction was based upon his dedication and completion of the RISE court program and its required components. Mr. Tirado maintains that this current application for early termination is based on other factors that are set forth in this application and strongly supported by his rehabilitation. His argument is that when such factors are viewed in conjunction with the November 2025 amendments to the Guidelines (focusing strongly on rehabilitation as the basis for early termination of supervised release), there is presently ample support to warrant the request for the early termination of his supervised release.

Mr. Tirado has not only excelled at work and in his sobriety, but he has also used his term of supervised release to nurture his relationships with those closest to him. Although Mr. Tirado still resides with his mother and 17-year-old nephew in the Bronx, he lives in close proximity to his two young children: a ten-year-old from his previous relationship with Ms. Zulekya Espinal and a twelve-year-old from his previous relationship with Ms. Leslianne Bonaparte, who reside with their respective mothers. PSR ¶¶ 59-60. Mr. Tirado has an extremely close relationship with both children. He picks them up from school and visits them a few times a week and every weekend. Not only does Mr. Tirado prioritize his individual relationship with each child, but he also focuses on strengthening the siblings' bonds with each other by having both children at the same time and doing fun activities together. This is extremely important to Hector as his children did not know each other until Hector's release from prison. Because of Mr. Tirado's efforts, the children are getting closer as time goes by.

Apart from some minor traffic offenses, Mr. Tirado has fully complied with his conditions of supervised release. He has remained sober and clean since the day of his release. Given this record of rehabilitation, steady and fulfilling employment, close familial relationships,

[3] The RISE Court is a special court of the Southern District of New York that helps individuals at the "highest risk of recidivism" successfully reintegrate into the community. The RISE Court, U.S. DISTRICT COURT – SOUTHERN DISTRICT OF NEW YORK, https://www.nysd.uscourts.gov/programs/rise_court (last visited Oct. 10, 2025)

and significant adherence to his release conditions, continued oversight does not serve the intended goals of supervised release, particularly in light of the November 2025 U.S.S.G. amendments, which now focus even more narrowly on rehabilitation.

## III. Legal Basis for Early Termination of Supervised Release

18 U.S.C. § 3583 governs supervised release and empowers courts to terminate a term of supervised release and discharge a defendant released at any time after one year of supervised release, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), considering that such action is warranted by the conduct of the defendant and in the interest of justice.[4] 18 U.S.C. § 3583. Those factors are:

(1) "the nature and circumstances of the offense and the history and characteristics of the Defendant;"
(2) "the need for the sentence imposed" to:
    (a) afford adequate deterrence to criminal conduct,
    (b) protect the public from further crimes of the defendant, and
    (c) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) "the kinds of sentence and the sentencing range;"
(4) "any pertinent policy statement;"
(5) "the need to avoid unwarranted sentence disparities;" and
(6) "the need to provide restitution to any victims."

The November 1, 2025 Guideline amendments overlap with the factors of § 3553(a) in many ways. They both set forth similar factors that courts should review in deciding whether to grant requests for early termination of supervised release. However, the recent Guideline amendments make clear that supervised release should serve rehabilitative ends, and they expressly invite early termination when rehabilitation is shown.

The Commission revised §5D1.1 and related policy statements to stress that supervision is "dependent on the needs of the defendant for supervision," and that courts should avoid "wasting" supervision resources on people who no longer need them because they have successfully reintegrated.[5] The new guidelines explain that supervised release "fulfills rehabilitative ends, distinct from those served by incarceration,"[6] and instructs courts to

---

[4] Additionally, Federal Rule of Criminal Procedure Rule 32.1, Revoking or Modifying Probation or Supervised Release, provides in relevant part:

(c) Modification

(1) In General. Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation.

(2) Exceptions: A hearing is not required if:

(A) the person waives the hearing; or

(B) the relief sought is favorable to the person and does not extend the term of probation or supervised release; and

(C) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so.

[5] Introductory cmt. to U.S.S.G. ch. 5, pt. D (effective Nov. 1, 2025).

[6] *Id*. (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)).

consider whether supervision is still needed "to provide further rehabilitation and whether supervision will promote public safety."[7] The amendments also align with 18 U.S.C. § 3583(e)(1) by eliminating the need for "extraordinary reasons" to be present to warrant early termination and instead emphasize that, after one year of compliant supervision, courts should undertake an individualized assessment of the defendant's conduct, risk profile, and rehabilitation to decide whether early termination "is warranted by the conduct of the defendant and the interest of justice."[8]

The Guidelines provide a list of factors that the court may consider in its determination of whether to grant a defendant's request for early termination of supervision. These include the following:

1. any history of court-reported violations over the term of supervision;
2. the ability of the defendant to lawfully self-manage (*e.g.*, the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);
3. the defendant's substantial compliance with all conditions of supervision;
4. the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;
5. a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and
6. whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.[9]

In addition, 18 USC § 3583(e)(1) gives a district court discretion to terminate a defendant's term of supervised release early "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *United States v. Rosario*, No. 17 cr. 27 (LTS), 2023 U.S. Dist. LEXIS 198787 at *2 (S.D.N.Y. Nov. 6, 2023) (internal quotation marks omitted).

Thus, a court's review of all of the foregoing legal authorities (18 USC § 3553(a), the Guidelines (particularly the November 2025 amendments), and 18 USC § 3582(a)), in conjunction, determine whether a defendant should be granted early termination of supervised release. Mr. Tirado maintains that early termination of supervised release in his case is warranted after applying his facts to the legal basis set forth above.

## IV. The Facts of Mr. Tirado's Case Support Early Termination of Supervised Release

### A. The Guideline Amendments of November 2025 support early termination of supervised release.

[7] *Id.*
[8] U.S.S.G. §5D1.4(b)
[9] U.S.S.G. §5D1.4, cmt. (n.1(B))

**i. Hector has incurred no new violations while on supervised release.**

As noted above, Hector has been on supervised release for over 27 months. He has maintained a clean criminal record and incurred no new charges or arrests during his term of supervised release.[10] Thus, this factor supports early termination of supervised release.

**ii. Hector's ability to self-manage compels early termination of supervised release.**

Hector has taken every opportunity offered to him to help him in his quest towards rehabilitation, particularly with his substance abuse. Until his arrest in this case in 2015, Mr. Tirado self-medicated with marijuana, Percocet, Ecstasy, and Xanax to cope with the pain of seeing his single mother struggle to support their family. PSR ¶ 69-73. During his incarceration, Hector addressed his substance abuse problems by successfully completing a non-residential drug treatment program. Shortly upon his release from prison, Hector participated in the RISE court program, a behavioral wellness program, and twelve sessions of therapy. These programs equipped Mr. Tirado with the tools necessary to continue his sobriety. Impressively, Hector has been sober the entire 27 months of his supervised release term.

Hector has addressed not only his illicit drug dependence but has been able to self-manage all areas of his life. For example, he has been able to financially support himself through steady and fulfilling employment. He has forged strong relationships with his family, particularly his minor children. He is an integral part of their lives. He has dealt with his mental health issues, and has learned tools to help him keep mentally strong and on the straight and narrow and to prevent him from returning to his life before prison. In short, he has become self-reliant through his rehabilitation efforts and actions. This compels early termination of supervised release here.

**iii. Hector has substantially complied with all conditions of supervision.**

Since the day he was granted supervised release, Hector has maintained a clean criminal record and incurred no new arrests or charges. Coupled with his virtually nonexistent criminal history, Mr. Tirado's compliance with the terms and conditions of his supervised release strongly demonstrates that he will not recidivate if Your Honor grants early termination of supervised release. Accordingly, early termination of supervised release is appropriate in this instance.

**iv. Hector has engaged in appropriate prosocial activities and has reliable prosocial support to remain lawful beyond the period of supervision.**

Hector has done everything possible to change his former way of life and thinking, and to keep him focused on the law-abiding life he has today. He has participated in every program he could get into to help him change his behavior and actions and support a lawful existence for the remainder of his life. These programs include the drug prevention program he attended while in prison and the RISE court program he participated in following his release. He continues to attend Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA") programs to maintain his sobriety. Moreover, he has worked on his mental health issues and thought process to make

[10] Although Mr. Tirado was stopped for traffic offenses, he was given a desk appearance ticket.

sure he continues in this direction going forward. In addition, he has been gainfully employed since his release from prison and has devoted a substantial amount of time to rebuilding and strengthening his family relationships. Mr. Tirado's focus on these important familial relationships in his multigenerational household, his constant maintenance of fulfilling and lawful employment, and his work at remaining mentally fit and drug free demonstrate that he has built the prosocial life that aligns with the rehabilitative purposes of supervised release. In light of this, early termination of supervised release is warranted and appropriate.

**v. Mr. Tirado has clearly demonstrated a reduction in risk level and maintenance of the lowest category of risk over his period of supervision.**

Mr. Tirado has reduced his risk level by participating in programs that encourage law abiding behavior. As mentioned earlier, Mr. Tirado successfully completed the RISE court program and a behavioral wellness program, which provided him with the tools necessary to reintegrate into society smoothly and successfully. Having steady and fulfilling employment has given Hector structure and a steady income so that he is not tempted to go back to the streets and reoffend. Moreover, the tools Hector obtained from his twelve sessions of therapy have equipped him with what he needs to continue leading an upstanding life. Because of these solid foundations, he is currently at the lowest level of supervision. Not only are these accomplishments a testament to Hector's character, but they also demonstrate that he is no longer at the "high" risk level previously assigned him. In light of Hector's exceptional rehabilitation and track record of living a safe and productive life in his community, continued supervision is not warranted.

**vi. Early termination of supervised release will not jeopardize public safety.**

Early termination of supervised release will not endanger the community as Mr. Tirado has not incurred new arrests or charges since his release, and has fully complied with the conditions of his supervised release apart from some traffic offenses. Furthermore, the instant offense – which is a nonviolent drug offense that Mr. Tirado sustained at just 24-years-old – is his first and only conviction. Before this conviction, Mr. Tirado was only arrested for nonviolent drug offenses that occurred in his early twenties. PSR ¶ ¶ 48-49.[11] Finally, it is clear that the older a defendant is, the less likely he is to reoffend. At 32 years old, Mr. Tirado has proven this statistic true by turning his back on a life of crime. In essence, upon his release, Mr. Tirado has safely reintegrated into his community rather than harming it. Due to his compliance with the law and his compliance with the terms of his supervised release, continued supervision serves no purpose.

[11] As such, Hector maintained a total criminal history score of zero at the time of his sentencing before Your Honor. PSR ¶ 51.

**B. The 18 U.S.C. § 3553 (a) factors also support Mr. Tirado's request for early termination of supervised release.**[12]

**i. Mr. Tirado's history and characteristics supports his request for early termination of supervised release.**

Subsection (a)(1) of 18 U.S.C. § 3553 directs the Court to look at the nature and circumstances of the offense and the history and characteristics of the defendant. The Defense does not dispute the seriousness of Mr. Tirado's conduct. However, Hector pled guilty to the offense and accepted full responsibility for his actions. PSR ¶ 6. Furthermore, he assisted the authorities in his prosecution by timely notifying them that he would enter a guilty plea. PSR ¶ 44.

Importantly, Mr. Tirado's conduct following his sentencing before Your Honor demonstrates that he should be granted the relief he seeks. Mr. Tirado formerly self-medicated with illicit drugs to cope with seeing his single mother struggle to raise an entire family on her own. PSR ¶ 73. But, Hector has demonstrated his commitment to rehabilitation in and out of prison – the very purpose of supervised release as emphasized in the 2025 sentencing guidelines amendments. He treated the substance abuse issues that developed during his adolescence by participating in a non-residential drug treatment program, even though his sentence was not reduced as it would have been by the Residential Drug Abuse Program ("RDAP"). As mentioned earlier, upon his release, Hector dedicated a year of his life to successful completion of the RISE court program and attended twelve sessions of therapy. Because of the hard work and dedication he put in to atone for his previous transgressions, Mr. Tirado is sober. Furthermore, Hector has refused to hurt his children the same way his father hurt him when he abandoned the family. Instead, Mr. Tirado has forged and paved his own path by being an active, present, and supportive parent to his two children. Mr. Tirado has clearly grown from his past and is doing better for himself and his children. Hector's history and characteristics strongly demonstrate that early termination of his supervised release term is warranted.

**ii. Granting Mr. Tirado's motion would afford adequate deterrence and serve to protect the public.**

Early termination of Mr. Tirado's term of supervised release affords adequate deterrence and serves to protect the public pursuant to 18 U.S.C. § 3553 (a)(2)(B) and (a)(2)(C). Hector has been leading a law abiding life since the day he left prison, maintaining a clean criminal record with no new charges or arrests, and taking many actions on his own accord to rectify his misdeeds. Therefore, granting this motion would not disturb specific or general deterrence.

**iii. The weight of the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner factor is extraordinarily little.**

---

[12] 18 U.S.C. § 3553 (a)(6) is inapplicable because Mr. Tirado earned a two-year reduction for his term of supervised release due to his completion of the RISE court program and its required components. 18 U.S.C. § 3553 (a)(7) factor is inapplicable because restitution was inappropriate for Mr. Tirado's offense.

The Defense submits that this factor has very limited weight in this case. Mr. Tirado earned his GED while incarcerated. Upon his release, he has maintained fulfilling and steady employment across various industries. He also obtained mental health and substance abuse treatment. Hector attends AA and NA meetings voluntarily. It is clear that prolonged monitoring would be purposeless as Mr. Tirado has accomplished exactly what this provision compelled him to do.

**iv. The policy statement by the Sentencing Commission pertaining to the purpose of supervised release supports the Defense's motion.**

This was previously addressed in Point III, *supra*. However, to briefly summarize, Mr. Tirado's individual circumstances demonstrate not only successful reintegration into his community, but also his transformation from a man formerly plagued by his mental health and substance abuse issues into a man who is currently living a healthy and respectable lifestyle. Hector is no longer the person Your Honor sentenced on September 20, 2017. Although the offense for which Hector was convicted mandates a mandatory minimum supervised release sentence of five years, his extraordinary progress since release – particularly his participation in therapy, successful completion of the RISE court program, continued sobriety, maintenance of steady and fulfilling employment, and nurturing of close familial relationships – warrants early termination. Mr. Tirado's evolution and progress exemplify the very purpose underlying the recent sentencing policy amendments. Accordingly, early termination of supervised release is consistent with the spirit of these reforms.

## V. Conclusion

Mr. Tirado's journey is a testament to resilience, hope, and unwavering commitment to positive change. Hector's life has been one of difficult moments and lessons, but at its core, he has used every lesson to transform his future. Mr. Tirado's commitment to positive change for himself and others would only be further propelled by early termination of his supervised release. Based on the foregoing facts, the Defense respectfully urges Your Honor to carefully consider the recent amendments to the sentencing guidelines while evaluating the merits of the Defense's motion for early termination of supervised release. Early termination will ensure that Hector can continue to maintain stable and meaningful employment and contribute positively as a responsible, hardworking member of the community. Therefore, for the above reasons, Mr. Tirado respectfully asks this Court to grant his request for early termination of supervised release.

Sincerely,



Lorraine Gauli-Rufo, Esq.

*Attorney for Hector Tirado*

cc: Jared Lenow, AUSA
Lauren Blackford, USPO