**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

April 2, 2026

**BY ECF**

The Honorable George B. Daniels
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *United States v. Hector Tirado*, 15 Cr. 487 (GBD)**

Dear Judge Daniels:

The Government respectfully submits this letter in response to the defendant's motion for early termination of his term of supervised release. (Dkt. 759.) For the reasons set forth below, the motion should be denied.

## I. Background

From approximately May 2014 through July 2015, the defendant participated in a violent narcotics trafficking crew (the "Crew") that sold heroin and crack cocaine in the vicinity of Aldus Street and Hoe Avenue in the Bronx (the "Crew"). (PSR ¶¶ 11–12.) Operating just one block from an elementary school, the Crew sold substantial quantities of these drugs from stairwells and common areas of apartment buildings whose residents included families and young children, and from private apartments that had been converted into drug stash houses. (PSR ¶ 12.) Multiple members of the Crew possessed firearms and engaged in acts of violence, including shootings and attempted murders, to protect the Crew's territory and enhance its reputation. (PSR ¶ 13.)

The defendant played a vital role in this scheme. In addition to being responsible for the distribution of at least three kilograms of heroin and 840 grams of crack cocaine, the defendant served as a middle manager in the Crew. (PSR ¶ 27.) For example, the defendant stored heroin in his apartment for one of the Crew's leaders, Jonathan Ojeda ("Ojeda"), distributed heroin to street dealers and collected money for Ojeda, chauffeured Ojeda from place to place, and gave orders directly on Ojeda's behalf. (*Id.*) Equally troubling was the defendant's willingness to use violence to further the conspiracy. On May 29, 2015, the defendant and one of his co-defendants assaulted a male victim on a public street in the Crew's territory. (Sentencing Letter from Gov't to Court (Sept. 19, 2017), at 2 (Dkt. 287).) After the victim escaped and returned with a knife, another Crew member fired gunshots at the victim upon the direction of Calvin Ojeda, another Crew leader. (*Id.*) Although no one was killed, the incident underscores the violent nature of the Crew's trafficking operation and the lengths to which its members—including the defendant—would go to protect their turf.

On May 23, 2017, the defendant pled guilty to one count of conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin and a detectable amount of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 841(b)(1)(C). (PSR ¶¶ 2, 6.) On September 20, 2017, the Court sentenced the defendant to a term of imprisonment of 120 months, followed by five years of supervised release, both of which were the mandatory minimum terms required under the statute. (Dkt. 289.)

The defendant's five-year term of supervised release began on July 3, 2023. (Dkt. 744.) On March 25, 2025, acting on the application and recommendation of U.S. Probation Officer Specialist Lauren M. Blackford, the Court granted the defendant a two-year reduction in his term of supervised release. (*Id.*) The defendant's supervision is now scheduled to conclude three months from now, on July 2, 2026. (*Id.*)

On December 12, 2025, the defendant filed the instant motion seeking early termination of his term of supervised release. (Def.'s Letter Br. in Supp. of Mot. for Early Termination of Supervised Release ("Def.'s Br.") (Dkt. 759).) Probation Officer Blackford has advised the Government that Probation takes no position on the defendant's motion.

## II. Applicable Law

The Court may terminate a term of supervised release "at any time after the expiration of one year of supervised release" if, after revisiting the relevant factors set out in 18 U.S.C. § 3553(a), "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). However, "[e]arly termination of [supervised release] is not warranted as a matter of course." *United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D.N.Y. 2015) (citation and internal quotation marks omitted). This provision is to be invoked "[o]ccasionally," and exists "in order to account for new or unforeseen circumstances" that would "render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997). While these circumstances may include "exceptionally good behavior by the defendant," *id.*, "good conduct alone is not a reason for early termination," *United States v. Quinones*, No. 19 Cr. 87 (JGK), 2023 WL 6959075, at *1 (S.D.N.Y. Oct. 9, 2023) (citation and alteration omitted) (denying motion for early termination of supervised release where defendant had failed to identify new or unforeseen circumstances that would compel the court "to reassess [its] careful balancing" at sentencing, and had "not suggested that the terms of supervised release [were] interfering with the goals of sentencing" or "impos[ing] unusual burdens on the defendant").

## III. Discussion

Having already received substantial leniency through a two-year reduction in his term of supervised release, the defendant now seeks additional relief in the form of early termination of his supervision, which is already scheduled to conclude in three months. As explained below, neither the defendant's conduct nor the interests of justice warrants such relief, and the Court should deny the motion.

First, the § 3553(a) sentencing factors, particularly the nature and circumstances of the offense and the need to afford adequate deterrence to criminal conduct, counsel against early termination of supervised release. *See* 18 U.S.C. §§ 3553(a)(1), (2)(b). As discussed, the defendant helped manage a violent narcotics trafficking operation that peddled heroin and crack cocaine around families and young children. He played an integral role in the operational execution of the scheme by storing and distributing heroin, issuing orders, and collecting money on Ojeda's behalf. And, as the May 29, 2015 incident shows, he was willing to use violence to advance the Crew's interests. The defendant himself understandably "does not dispute the seriousness of [his] conduct." (Def.'s Br. 8.) As such, the defendant's completion of the full term of supervision is therefore necessary to deter him from engaging in new criminal conduct and, should he violate the terms of his supervised release, permit the Court to hold him accountable as necessary. *See, e.g.*, *United States v. Guerrero-Fajardo*, No. 23 Cr. 210 (JPC), 2024 WL 3925338, at *2 (S.D.N.Y. Aug. 23, 2024) (denying early termination motion based on the nature and circumstances of the offense, as well as the need to afford adequate deterrence and protect the public from further crimes by the defendant, who had "committed an extremely serious offense that involved distributing large[] quantities of a dangerous and deadly drug in the New York area").

Second, although the Government recognizes that the defendant has complied with the terms of his supervision, maintained steady employment, and pursued constructive prosocial activities, (*see* Def.'s Br. 6–7), it is well established that such conduct does not constitute the kind of "exceptionally good behavior" or "new or unforeseen circumstances" that would warrant early termination of supervised release, *United States v. Wheeler*, No. 20 Cr. 492 (GHW), 2025 WL 1295610, at *2 (S.D.N.Y. May 5, 2025) (denying motion for early termination despite the defendant's compliance with the terms of his supervised release, steady employment, and "development and progress"). As courts in this District have repeatedly observed, "full compliance with the terms of supervised release is what is expected of [a defendant]" and "does not warrant early termination." *United States v. Dussard*, No. 16 Cr. 673 (GBD), 2025 WL 2710212, at *2 (S.D.N.Y. Sept. 23, 2025) (citation omitted) (denying motion for early termination even though the defendant had "adjusted well to supervised release" and represented that he had "maintained steady employment" and "achieved a stable family life"). A defendant's "continued compliance with [his] terms of supervision, good attitude, and positive work ethic," though laudable, "does not rise to the level of being 'exceptional' or 'new or unforeseen.'" *United States v. Berrios*, No. 95 Cr. 84 (PKL), 2010 WL 1010022, at *2 (S.D.N.Y. Mar. 16, 2010) (gathering cases for same proposition). Thus, the defendant's principal rationale for early termination—that he has complied with the terms of his supervision and taken meaningful steps towards rehabilitation—does not warrant the relief sought.[1]

---

[1] Nor does the U.S. Sentencing Commission's recent policy statement at U.S.S.G. § 5D1.4, on which the defendant relies, (*see* Def.'s Br. 4–7), mandate a contrary result. As the Sentencing Commission has explained, Section 5D1.4(b), which pertains to early termination of supervised release, merely "restates the court's authority under 18 U.S.C. § 3583(e)(1) to terminate the remaining term of supervision any time after one year of supervised release if the court determines, following consultation with the government and the probation officer, that termination is warranted by the conduct of the defendant and in the interest of justice." U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines, at 34 (Apr. 30, 2025). The Commentary to this policy statement identifies "factors a court might consider in determining whether to terminate the

Third, the defendant's supervised release conditions are far from onerous—he remains on a low-intensity docket, requiring only that he submit monthly reports and request permission for interstate travel. These conditions do not constitute an undue hardship justifying early termination. *See United States v. Mejia*, No. 13 Cr. 617 (KPF), 2025 WL 3779083, at *3 (denying motion for early termination by a defendant on the Probation Office's low-intensity docket, and observing that the supervision requirements imposed on such a defendant do not place "unusual burdens on him or otherwise interfere[] with his ability to adjust to society"); *United States v. Pena*, No. 08 Cr. 578 (JGK), 2022 WL 2733871, at *1 (S.D.N.Y. June 27, 2022) (denying early termination where "all that the probation officer require[d] [was] that the defendant advise the probation officer of his travel plans and location"). Indeed, the Court has already allowed the defendant to travel abroad to the Turks and Caicos Islands, (Dkt. No. 748), which undermines any notion that the current terms of supervision are overly restrictive, *see United States v. Sam*, No. 16 Cr. 184 (JGK), 2017 WL 455511, at *2 (S.D.N.Y. Jan. 20, 2017) (denying early termination motion in part because the court had already permitted the defendant to travel, and thus, the defendant could not "point[] to any restrictions . . . as a result of the term of supervised release that interfere[d] in any way with her rehabilitation"). Without a showing that the terms of the defendant's supervised release "are interfering with the goals of sentencing or have imposed unusual burdens on [him,]" terminating his supervision at this time would not "be in the interest of justice." *Quinones*, 2023 WL 6959075, at *1.

---

remaining term of supervised release[.]" *Id.* But the Government has not identified any authority to suggest that the policy statement at Section 5D1.4(b) or its accompanying Commentary alters the legal standard for granting a motion for early termination, or otherwise confers a new substantive entitlement to early termination under certain conditions. Indeed, as counsel for the defendant acknowledges, the factors set forth in the Commentary to Section 5D1.4(b) "overlap with the factors of § 3553(a) in many ways." (Def.'s Br. 4.) Even taking the Sentencing Commission's policy statement into account, the Government respectfully submits that early termination of the defendant's supervision is not warranted here. *See, e.g.*, *United States v. Gonzalez*, No. 25 Cr. 483 (GHW), 2025 WL 3274491, at *3 (S.D.N.Y. Nov. 25, 2025) (applying "the relevant factors" under § 3553(a) and the application note to § 5D1.4(b) and concluding that early termination of supervised release was "inappropriate" where there was a "continuing need to afford deterrence to [the defendant's] criminal conduct," notwithstanding the defendant's "continued dedication toward his rehabilitation").

## IV. Conclusion

The defendant has failed to demonstrate that early termination of supervised release is warranted in this case. The Court should therefore deny the defendant's motion.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: Christian Hines
Christian Hines
Assistant United States Attorney
(212) 637-2631